[ PHILADELPHIA, FEBRUARY 15TH, 1840. ]

## SHARP *against* EMMET.

#### IN ERROR.

1. A factor who remits a bill to his principal in payment of goods sold on his account, and endorses the bill, does not thereby become personally responsible to his principal, if he receives no consideration for guaranteeing, and does not expressly undertake to do so.

2. The receipt of a certain amount per cent. upon sales, for " commission and guaranty," does not create a contract to guarantee the validity of a bill purchased *bona fide* in the usual course of business and remitted to the principal.

3. Whether evidence shall be given of contradictory statements made by a witness examined on the trial, without first interrogating or advertising the witness proposed to be contradicted, is a matter for the discretion of the Court trying the case ; and their decision will not be reviewed in this Court.

4. In an action against a factor to recover the amount of a balance alleged to be due to the principal abroad, and remitted by a bill of exchange, endorsed by the defendant, which was protested for non-payment, where the question was, whether, by receiving a certain per centage for " commission and guaranty," the validity of the remittance was guaranteed, it was *held*, that letters of the defendant to another mercantile person abroad, and accounts sent by the defendant to him, showing his transactions of a similar nature with that other person, were not admissible on the part of the plaintiff— being *res inter alios acta.*

THIS was a writ of error to the District Court for the City and County of Philadelphia, to remove the record of an action on the case, brought by Henry Emmet against John Sharp, Jun.

The plaintiff was a manufacturer of woollen goods, residing at Halifax, in England, and had consigned certain goods for sale to the defendant, who resided in Philadelphia. The defendant, in advance of the sales of these goods, remitted to the plaintiff a bill of exchange, drawn by Jeremiah Thompson, of New York, on Rathbone & Co., of Liverpool, for two hundred and fifty pounds, which was protested for non-acceptance, and afterwards for non-payment. This action was brought to recover the balance of account alleged to be due to the plaintiff; being the amount of this bill, with the charges, and interest.

(Sharp v. Emmet.)

The declaration was in assumpsit upon the bill of exchange with the general money counts. The defendant pleaded *non assumpsit*, and payment; and upon these issues the cause came on for trial, before Pettit, (Pres't) on the 23d of April, 1838, when the plaintiff gave in evidence the correspondence between the parties, the bill of exchange, and protest; and the day-book and ledger of the defendant, to show that he had received the proceeds of sales of the goods.

The defendant produced several witnesses in respect to the character and commercial credit of Thompson, the drawer of the bill; and also upon the point of usage respecting guarantees of sales and remittances. Among the witnesses was one Spackman, who testified that he was one of Thompson's agents for negotiating his bills in Philadelphia; that his credit was good, until the news arrived of Rathbone & Co. having refused to accept his bills; and that he never heard any suspicions or doubts of the goodness of his bills, until then.

The plaintiff, to rebut the testimony of the defendant on this point, produced several witnesses to prove that the credit of Thompson was bad; and that the usage in respect to remittances was different from that alleged on the part of the defendant. In the course of his testimony he called a witness to prove, that in a conversation between himself and Spackman, the witness for the defendant, the latter had heard doubt and suspicion expressed of the goodness of Thompson's bills, some months before the intelligence from Liverpool of the refusal of Rathbone & Co. to accept them. This testimony was objected to by the defendant's counsel, but admitted by the Court; and exception taken.

The plaintiff's counsel further offered in evidence certain letters written by the defendant, in the year 1827, to the firm of Halliday, Son & Brooks, of Manchester, in England, with account-sales enclosed; which evidence was objected to on the part of the defendant, but admitted by the Court, who said that one of the points made by the defendant's counsel was, that neither the rate of commission charged by the defendant to the plaintiff, nor the form in which it was charged, imported that he was a guarantor of the remittance; and the evidence might tend to show an interpretation by the defendant of the phrase " commission and guarantee five per cent." as the footing on which he was willing to do such business.—The admission of this testimony was also excepted to.

The nature and substance of the evidence given on the trial, and the points discussed are fully stated in the charge of the learned judge; which was as follows:

" This is an action of assumpsit, brought by Henry Emmet against John Sharp, Jr. The plaintiff is a manufacturer in York-

shire, England. In and before 1827, he made different consignments of goods to the defendant, a merchant at Philadelphia. Before the 19th of September, 1827, the defendant received certain dry goods by a vessel called the Tobacco Plant, and on that day, remitted to the plaintiff a bill of exchange, dated New York, 15th of September, 1827, drawn by Jeremiah Thompson, in his (J. Thompson's) own favour, on Messrs. Rathbone, Brothers & Co. of Liverpool, at sixty days's sight, for two hundred and fifty pounds. It was endorsed in blank by J. Thompson; and then by the defendant, in these words, " Pay to order of H. Emmet, J. Sharp, Jr." The bill was remitted in advance of sales of goods, by the Tobacco Plant. On the 26th of October, 1827, the defendant, having heard nothing further from England on the subject, made out his account-sales, in which he charged on the private sales of goods, " five per cent. commission and guarantee:" this was forwarded on the 30th of October, 1827. About that time news reached Philadelphia of the dishonour of Jeremiah Thompson's bills on Liverpool. The bill in question was refused acceptance, and never paid. The defendant having accounted to the plaintiff for all other goods, the question now is, who is to bear the loss of this bill. Much testimony has been offered as elucidating the case, and much ability displayed in argument. It is the duty of the Court to ascertain whether there are any legal principles applicable to the case ; and if so, to state them, so that the jury can apply them. I will make such references to the testimony as I proceed, as the cause seems to require.

There is one view of the case, asserted by the plaintiff, in regard to which the defendant agrees, that if the plaintiff is sustained in point of fact, he must recover. As there is no dispute about matter of law here, I will notice it first, and thus prepare the way for what have been treated as the more debateable questions. The plaintiff says, that admitting for a moment, that the defendant was a mere agent to remit a bill, and that his endorsement neither proved nor implied any thing against him, yet that there was not in fact a prudent and judicious performance of his agency. The defendant contends that there was ; and on this point there is an issue, which, if with the plaintiff, carries the whole case, no matter what may be the correct view of the rest of the cause. The rule of law is conceded, that the agent is bound to exercise a sound and honest judgment in matters left to his discretion. He must act with reasonable care and prudence, and exercise his judgment after proper inquiry and precautions. If ordinary diligence, that which a prudent man exercises in his own affairs, would have enabled him to learn the discredit of a party to a bill remitted, he will not be discharged from responsibility. The defendant would be bound to show that J. Thompson, whose bill he remitted, was in such credit as to justify the remittance. He has produced William Jones, Samuel Spack-

(Sharp *v.* Emmet.)

man, Richard Oakford, and James Mott, on this point; and he relies on some other testimony.

The plaintiff, to rebut on this point, has produced Henry Cope, Wm. McIlvaine, John A. Brown, Knowles Taylor, R. Willing, J. R. Evans, Benjamin Jackson, R. M. Blackford, Wm. C. Cardwell, and John Cook. The defendant alleges that the commercial world in *general* trusted J. Thompson; that the commercial community at large had no reason to distrust him; that he, the defendant, had no such notice of any facts as should, in the exercise of ordinary prudence, have put him on his guard; the defendant says, that while commercial men generally yielded full credit, those who doubted were but *exceptions*; resting, some of them on knowledge peculiar to themselves, and others on mere caprice or fastidiousness, without known grounds. The plaintiff says in reply, that the evidence shows a different state of things; that every New York witness, having no peculiar knowledge, doubted Mr. Thompson's credit; that those who were engaged in business here largely, saw and knew Mr. Thompson's situation, and made no secret of their views. That so far from the commercial world *generally* having confidence, there was general distrust, and that those who did give credit were the *exceptions*. The plaintiff refers to two circumstances in support of his views. The first, the price of the bill; second, that it was in advance of sales. If in advance for any object of favouritism or undue partiality to a man in doubtful circumstances, the matter may have weight. If honestly done, to put the principal in funds at an early day, it was not unusual or improper; if bought at lower than the usual rate in market of undoubted bills, a circumstance of weight. This is denied, however. The jury will decide as to facts and inference. The testimony is before you. It has been argued on both sides fully. If the case rested here, the jury would decide it on their view of the facts. If the jury are with the plaintiff, on this point, the other inquiries become useless.

But suppose the jury do not adopt the plaintiff's views of this part of the case, then it is necessary to go farther. The plaintiff then relies on the bill itself, and says. 1. By the endorsement the defendant made the debt his own. 2. The endorsement is "*prima facie*" evidence of his liability. The first point I noticed and disposed of during the trial on a question of evidence, and for the present, I hold that the endorsement does not preclude further inquiry. But I am very clear in my opinion, that the endorsement is *prima facie* evidence of the defendant's liability, which ought to prevail, unless encountered and rebutted by the defendant; and this I take to be in harmony with the doctrine of *Chitty*, page 39; with the case of *Kidsdon* v. *Dilworth*, (5 *Price*, 564;) and with the *Mechanics Bank* v. *Earp*, (4 *Rawle*, 384-5.) Nor is the mere existence of the relation of principal and agent between the parties, without more, sufficient to rebut this *prima facie* evidence. The endorsement is not only

(Sharp *v.* Emmet.)

not inconsistent with, and therefore not rebutted by the agency, but is perfectly consistent with it, and therefore leaves the defendant under the necessity of going further, and showing that there was no guarantee. He may show an agreement that he was not to guarantee, or that the endorsement was merely to accommodate the plaintiff, or was for a purpose or consideration which has failed or been satisfied. The endorsement is of itself a *contract of guarantee.* Where the bill is payable in England, it is a contract guaranteeing payment in England. Mere agency at Philadelphia cannot of itself, without more, repel the *prima facie* evidence of this, which the endorsement furnishes. To be sure, where it is clear that the agency was narrowed down to the mere sale of the goods, and that the remitting of the bill is something over and above the agency, there the want of consideration appears, and the agency would rebut, but that is assuming the whole matter in controversy here, and more than we have a right thus to assume. To hold the agency of itself sufficient, it must appear plain that the character of the agency did not embrace the endorsement or remittance of bills. Then what else is there? The defendant urges the character of the business, the mode of keeping the accounts, and the charges in them, the correspondence, and certain motives for the endorsement. The plaintiff takes up the same matter, and says, so far from repelling or rebutting the contract imported by the endorsement, they do not even throw a doubt upon it; that so far from throwing a doubt upon it, they really strengthen and confirm it. The character of the business was the selling goods sent from England, and every thing usually incident. The course of business seems to call for remittance by the agent of sales, without waiting till drawn upon. Five per cent. is charged for commission and guarantee. Much evidence has been given on both sides as to charge of commission. If Mr. Sharp, for five per cent. commission, chose to make the sales and endorse the bills, certainly such a bargain was open to him. The plaintiff says there is nothing in the evidence to show this to have been an improbable arrangement; the defendant alleges that there is enough to show it was not made: and the jury must determine. The charge of five per cent. connected with the testimony, has afforded ground of much ingenious discussion. As to the evidence, the plaintiff alleges that all the witnesses agree that a factor who does not guarantee, never endorses; when a factor does guarantee, he sometimes endorses, and sometimes not. As to the meaning put by the defendant himself on the words " commission and guarantee five per cent.," the plaintiff refers to the letter to Halliday, Son & Brooke, in connection with the other evidence. This is all for the jury. Then again some arguments were founded by the defendant's counsel upon the mode of keeping the accounts respecting auction sales and private sales. These were all answered by the plaintiff's counsel, who says they even confirm his views. I

(Sharp v. Emmet.)

need not refer to each. The matter is for the jury. Then the defendant has undertaken to show why he endorsed the bill; to guard against robbery; to show ownership in case of loss; to make a voucher; and he made some other suggestions, which the jury will remember. The plaintiff says these reasons are altogether insufficient; that they are what every endorser might make, who desired to evade his contract. This part of the case I submit to the jury, upon the argument of the counsel. The jury will determine whether the defendant has shown an agreement that he was not to guarantee, notwithstanding his endorsement; that a guarantee was not intended and understood at the time; that his conduct is to be explained on other grounds than that of liability to the plaintiff; or whether he has merely shown that ingenuity can exert itself in making suggestions in order to defeat a claim resting on the defendant's own contract in writing. If the defendant has made out his case, the jury will decide in his favour. If he has not, they will leave him to his contract of guarantee, as he himself made it.

Then as to the correspondence. There is another ground on which the plaintiff relies; he says, even if any doubt or difficulty rested on the meaning and effect of the endorsement, that the parties have concurred in their construction of it; that the plaintiff asserted in writing the liability of the defendant; and that the defendant acquiesced in this assertion, and thus removed all ground of doubt. A reference to the letters here becomes necessary. On the 16th of October, 1827, the plaintiff informed the defendant by letter, of Rathbone, Brothers & Co.'s refusal to accept, enclosed protest, value, with expenses, two hundred and fifty pounds, nineteen shillings and two pence, and added—"for which items you will remit the bill without loss of time, also account-sales." Now it is quite plain, that unless the plaintiff thought Mr. Sharp liable on the bill, it is not to be accounted for that he should ask him for another bill, for the amount of the former bill and expenses. Again, on the 19th of December, 1827, the plaintiff advises the defendant of the non-payment of the bill, value, with expenses, two hundred and fifty-two pounds, two shillings one penny, and adds—"I shall be obliged by your remitting for the same." Here is the same assertion of the defendant's liability. This letter acknowledges the receipt of three letters from the defendant, one of the 30th of October, with account-sales: another of the 15th of November, and another of the 22d of November, 1827. The letter of the 15th of November has matter in it which has been commented on. The plaintiff says the defendant treated the bill as his own, and having heard of Rathbone, Brothers & Co.'s refusal generally to accept Thompson's bills, he had, after expressions of "great confidence that ere this comes to hand, Rathbone will have concluded to accept or pay the bill of two hundred and fifty pounds, and other bills," said, "If they do not, it is no use sending them back, as J. T. has made over all his

property to his favourites," &c.   Now the plaintiff says, this is the language of instruction, not of mere friendly advice, for the plaintiff's adoption or rejection.   The defendant says it is the last.   But the plaintiff, in his letter of the 19th of December, shows that he deemed it a request to be obeyed for Mr. Sharp, and not advice to be acted on, or not, for himself.   The plaintiff alleges that the letter of the 16th of October and the letter of the 19th of December were both received in due course, the last about the 22d of February, 1828, as the New York post mark shows; and that though the plaintiff had the usual opportunity of writing, he allowed the packets of part of February, all March and April, and part of May, to depart without an answer, and he says, 1st. In point of law he acquiesced in the views of the plaintiff.   2d. This silence is conclusive evidence in point of fact of his knowledge and belief, that according to the true course of dealing between them the understanding was that he was liable.   On the 19th of May, 1828, he writes to the plaintiff, and referring to J. Thompson's bills, says, " I will hereafter remark," and enclosed an account-sales, debiting the plaintiff with the amount.   After this the parties may be considered as at issue on this point.   The subsequent correspondence was not of conclusive effect.   The rule which required an agent to keep his principal informed of all material occurrences in the agency, is perhaps not the one which applies here.   If a factor sells and credits the principal with the whole amount, and fails within a reasonable time to give notice that the debt is bad, he becomes an insurer for the whole amount.   Here, however, the transaction had come to a point where new relations existed.   A loss had been sustained, or made probable; the facts were all known to both parties, and the question was who, according to the previous bargain or understanding, was to bear the loss.   The true rule in such a case is, that silence by one, when the claims of the other are asserted and made known, is evidence from which a jury may infer an acquiescence—may infer an admission that the agreement or understanding was really such as the party making the claim alleges it to have been; and in a case doubtful in other respects, I think it strong evidence for the consideration of the jury.   In this case, then, while I do not take the case on this point from the jury, I leave it to them to determine whether the silence of the defendant, when he might have written, does not lead them to conclude that in point of fact the bill sent by the defendant was not payment to the plaintiff. If it was not payment, then the plaintiff had a right to reject it, and the plaintiff is entitled to recover, without regard to the bill or the endorsement.   To conclude :

1. If J. Thompson's bill was not a prudent remittance, the defendant is liable on that ground alone, even without endorsement.   2. If a prudent remittance at the time, then the endorsement is *prima facie* evidence of the liability of the defendant, which is to prevail

until rebutted by satisfactory proof. 3. If the question becomes necessary, the jury will determine from the correspondence and other facts, whether there was or was not an acquiescence in the claim of the plaintiff. The case has been ably argued. It seems to me to be as free from real difficulty as most contested cases are. The jury will, however, on the principles of law I have stated, decide for themselves."

The counsel for the defendant excepted to all the parts of the charge which declared that the endorsement of the bill was *prima facie* evidence of the liability of the defendant; and that the endorsement was of itself a guaranty, or *prima facie* evidence of a guaranty.

A verdict was given for the plaintiff, in conformity with this charge; and the cause having been removed to this Court, the following errors were assigned.

" 1. Admitting in evidence the conversation between Joseph R. Evans and Samuel Spackman.

2. Admitting in evidence the letters between John Sharp, Jr., and Halliday, Sons & Brooke.

3. In charging that the endorsement of the bill of exchange by John Sharp, Jr. was in itself a contract of guarantee.

4. In all that part of the charge which relates to the effect of the endorsement."

Mr. *Scott,* for the plaintiff in error.—

1. The Court ought not to have admitted evidence of conversations with the witness in contradiction of his statements, without his having been previously advertised. The rule of practice appears to be well settled in England. 3 *Starkie,* 1753. *The Queen's Case,* (2 *Brod. & Bing.* 300; 6 *Eng. Com. Law Rep.* 121.) *Andrews v. Smith,* (1 *Moody & Malkin,* 473; 22 *Eng. Com. Law Rep.* 360.) *Andrews v. Askey,* (8 *Carrington & Payne,* 8; 34 *Eng. Com. Law Rep.* 250.) There is no authority in this state in opposition to the rule recognised in *The Queen's Case.*

2. The correspondence with Halliday, Son & Brooke had nothing to do with the contract between the plaintiff and defendant, which must be ascertained from its own lights. *Leverick* v. *Meigs,* (1 *Cowen,* 664.)

3. The Court erred in charging that the endorsement of the bill by the defendant was of itself a contract of guaranty. In *Earps v. The Mechanics Bank,* (4 *Rawle,* 389,) it was decided, that an agent who receives a bill and sends it for collection, does not bind himself by putting his name on the back. The distinction between that case

(Sharp *v.* Emmet.)

and this is without a difference. How does an endorsement make a contract of guaranty? The contracts are entirely different. The first count in the declaration in this case is in the bill. The contract here is express, and amounts to nothing more than a direction to pay the plaintiff. The evidence of the plaintiff showed that the defendant remitted as agent merely. The judge took away from us the benefit of our position in respect to the contract of agency. In *Leverick* v. *Meigs*, (1 *Cowen*, 664,) it is laid down by the Supreme Court of New York, that "the only difference between a factor acting under a *del credere* commission, or without one, is as to the *sales* made." There is no case in which it has been held that a subsequent holder has a right to strike out or alter the words on the back of this bill, viz., " Pay to the order of H. E." No person could claim except through Emmet, unless by striking out the name of Sharp. This special endorsement proves that he remitted merely as agent. *Bredin* v. *Dubarry*, (14 *Serg. & Rawle*, 30.). The case of *M'Kenzie* v. *Scott*, (6 *Brown's P. C.* 280,) ought not to be considered an authority. No reasons are given for dismissing the appeal; so that we are not informed on what points the decision turned. *Kidson* v. *Dilworth*, (5 *Price*, 564 ; 2 *Eng. Exch. Rep.* 311.) *Gill* v. *Cubit*, (3 *Barn. & Cres.* 466 ; 10 *Eng. Com. Law Rep.* 154.) *Shaw* v. *Peacock*, (2 *Carr. & Payne*, 215 ; 12 *Eng. Com. Law Rep.* 95.)

Mr. *Cadwalader*, for the defendant in error.—A count upon a guaranty in this case would have been superfluous. If a man has a contract of guaranty, and receives a bill endorsed, this is a guaranty of the bill. *Nicholson* v. *Gouthet*, (2 *Hen. Bl.* 612.) The word *endorsement* is almost synonymous with *guaranty*. *Lambert* v. *Oates*, (1 *Ld. Ray'd*, 443.) The rule is always to construe an ambiguous act against the party who does it. The evidence of the great majority of the witnesses who were commercial men, was, that this was a guaranty. The understanding in England appears by the testimony given in the case of *M'Kenzie v. Scott*, referred to on the other side. In *Leverick* v. *Meigs*, so much relied on for the plaintiff, there was no endorsement. The rule laid down by the learned judge below is in accordance with the doctrines of the text writers in England and abroad. *Beawes Lex Merc.* 427, § 97, &c. In a note to *Sirey's Code de Commerce*, 139, will be found a decision of the Court of Cassation in France, that an endorsement by a factor imports a guaranty; and that case recognizes a distinction between a factor and a banker. *Lawrence* v. *Stonington Bank*, (6 *Connecticut Reports*, 528.) All the cases are reconciled by remarking, that there is no instance in which a factor was held no to be liable, where he endorsed the bill. *Chitty on Bills*, 261. 265. *Leadbeater* v. *Farren*, (5 *Maule & Selw.* 349.) *Ducarry* v. *Gill*, (4 *Carr. & Payne*, 121 ; 19 *Eng. Com. Law Rep.* 302.) *Lefevre* v. *Lloyd*, (5 *Taunton*, 749 ; 1 *Eng.*

(Sharp v. Emmet.)

*Com. Law Rep.* 250.) *Goupy* v. *Harden*, (7 *Taunton*, 159; 2 *Eng.* *Com. Law Rep.* 58.) *Bank of Montgomery* v. *Walker*, (9 *Serg. &. Rawle*, 240.) *Walker* v. *Bank of Montgomery*. (12 *Serg. & Rawle*, 382.) *Pike* v. *Sheet*, (1 *Moody & Malk*. 226; 22 *Eng. Com. Law Rep.* 299.) An agent may prove that it was agreed that there should be no liability, but the *onus* lies on him. *Exparte Twogood*, (19 *Ves. Rep.* 231.) *Hovey* v. *Blakeman*, (4 *Ves. Rep.* 608, 9.) *Ingraham* v. *Gibbs*, (2 *Dall.* 219.) *Schenckhouse* v. *Gibbs*, (4 *Dall.* 136.) *Exparte Clarke*, (3 *Bro. Ch. Rep.* 238.) *Horsley* v. *Bell*, (1 *Bro. Ch. Rep.* 101.) *Eaton* v. *Bell*, (5 *Barn. & Ald.* 34; 7 *Eng. Com. Law Rep.* 13.) Where a bill has been drawn by the factor himself, the same doctrine applies as was laid down in this case. Every endorsement imports a consideration and implies a purpose. Here the first endorsement was in blank. In *Peacock* v. *Rhodes*, (1 *Douglas*, 633,) it is said that a bill of exchange endorsed in blank is equivalent to a bank note, and circulates like one, unless the payee choose to restrain its currency. *Clark* v. *Piggot*, (12 *Mod.* 192, 3.) 2 *Strange*, 1103. *Smith* v. *Clarke*, (1 *Peake N. P. C.* 295.) *Gorgerat* v. *M'Carty*, (1 *Yeates*, 100.) This being a special endorsement, strengthens the idea of a guaranty. It is like the endorsement of a bank note. Thompson, the drawer, might have been a fictitious person. If his handwriting had been forged, the defendant would have been liable on his endorsement. *M'Cormick* v. *Trotter*, (10 *Serg. & Rawle*, 97.) *Buller's N. P.* 269. *Hunter* v. *Blodget*, (2 *Yeates*, 480.) Every endorser is a new drawer. *Bomley* v. *Frazier*, (1 *Strange*, 441.) *Heylin* v. *Adamson*, (2 *Burr.* 674.) The question is whether the defendant was to pay for the sales in Philadelphia or London. The conduct of the defendant after notice of the non-acceptance of the bill, proves that he considered himself liable. *Harvey* v. *Turner*, (4 *Rawle*, 223.)

2. The rule in the *Queen's Case* has never been expressly adopted in this country, and seems hardly to be the law in England. *Phillips on Evid.* 230. 3 *State Trials*, 131. 4 *State Trials*, 614. 2 *Esp.* 490. 692. 4 *Esp.* 212, 213. *Olroyd's Case*, (1 *Russ. & Ry.* 89.) In *Tucker* v. *Welsh*, (17 *Mass. Rep.* 166,) C. J. PARKER says, that the rule in the *Queen's Case* has never been adopted in this country. *Maxwell* v. *Handy*, (8 *Pickering*, 562.) *Baker* v. *Arnold*, (3 *Caines*, 279.) *Moyer* v. *Brumaux*, (3 *Yeates*, 30.) *Craig* v. *Craig*, (5 *Rawle*, 96.) *Stahle* v. *Spohn*, (8 *Serg. & Rawle*, 317.) Where a party finds himself surprised by the testimony of a witness, he must from necessity be allowed to give evidence of contradictory statements. *Cowden* v. *Reynolds*, (12 *Serg. & Rawle*, 283.) *U. States* v. *Johns*, (3 *Wash. C. C. Rep.* 210.) *Lamalere* v. *Case*, (1 *Wash. C. C. Rep.* 413.) *Hand* v. *Elvira*, (1 *Gilpin*, 60.) At all events, this was a matter of discretion with the Court below, and is not revisable on error.

(Sharp *v.* Emmet.)

3. The letters to Halliday, Jones & Co. were admitted for the purpose of construing the defendant's contract by his own usage. The acts and declarations of one of the parties in the same kind of transaction are admissible in evidence. In *Harwood v. Ramsay*, (15 *Serg. & Rawle*, 31,) it was held that the relevancy or irrelevancy of testimony is a question for the Court below. *Barrymore v. Taylor*, (1 *Esp.* 326.)

Mr. *J. R. Ingersoll*, in reply.—It appears by a note to the last American edition of *Phillips on Evidence*, (Vol. 2, p. 707, note) that the rule stated in the *Queen's Case*, has been recognised and acted upon in this country. *Brown v. Bellows*, (4 *Pickering*, 188.) *Bellinger. v. The People*, (1 *Wendell*, 595.) The rule is a very convenient one, and very proper for the protection of witnesses, whose characters may be attacked without redress. There is a wide distinction between evidence of the declarations of a party, and of those of a witness. The rule was not laid down for the first time in the *Queen's Case*. In a note to *Angus v. Smith*, (already cited) it is said that the general practice has been in conformity with the rule in that case.

The endorsement of a bill by an agent has never been considered as evidence of his liability. The authorities show that the judge was mistaken in this respect. Proof of agency is an answer, *prima facie*, at least, to the inference from endorsement. If, as alleged, the defendant knew that the bill was worth nothing, then he could not have intended to guarantee it. *True v. Fuller*, (21 *Pickering's Reports*, 142, 3.) The holder of a bill has no right to alter a special endorsement. An endorsement by an executor does not make him personally liable. (4 *Ves.* 608.) Here there is no proof of any guaranty, except what arises from the endorsement. Then it is asked, why did the defendant endorse. The answers are, 1st, To identify the channel through which the remittances came. 2d. To prevent accident and loss. But whatever may be the rule with respect to a blank endorsement, this is a special endorsement, which is equivalent to saying, without recourse.

The opinion of the Court was delivered by

SERGEANT, J.—Although the decision in *The Mechanics Bank v. Earp*, (4 *Rawle*, 389,) is distinguishable from the present—that being the case of a mere agent for transmission, who endorsed the note, this, of a factor who remitted a bill to his principal in payment—yet the principles settled there, rule the present case. Formerly there seems to have been in the law merchant a severe and inflexible rule applied, that whenever an agent or factor endorsed a bill, he was liable on his endorsement, unless he took care at the time to limit

his responsibility, by stating that it was "*sans recours*," or by procuration, or some similar mode. The authorities cited by Mr. Justice ROGERS, in *The Mechanics Bank* v. *Earp*, and those referred to in the argument here, sufficiently show this. But it is equally certain, that in more modern times the severity of this rule has been relaxed ; and it is now held, that between the agent and the principal, the agent remitting a bill for payment with his endorsement, is not obliged, in order to exempt himself, to do so in express terms on the face of the endorsement. Such a restriction is objectionable in many instances, as calculated to throw a doubt over the responsibility of the prior parties, and to discredit them with those who may see the endorsement. The rule is, that the endorsement of the factor must be construed by the circumstances under which it is made ; and unless there be something to show that in endorsing he intended to render himself personally liable, or that he was bound to do so, it ought not to be so intended. A factor remitting a bill to his principal in payment of goods sold on his account, and receiving no consideration for guaranteeing the bill, nor undertaking to do so, is not personally responsible merely on his endorsement.

But it is contended, that here the factor received five per cent. for commissions and guaranty, which included a guaranty of the remittance. This is a question of intention on the evidence. The general rule was very carefully considered by the Supreme Court of New York, in *Leverick* v. *Meigs*, (1 *Cow.* 664,) and it was decided, that under a contract by a factor to guaranty his sales, on a certain premium beyond the usual commission, the guaranty is only of the solvency of the purchaser, and not of the validity of the bill purchased in the usual course of business, and remitted on account of the principal.

Two bills of exception were taken to the evidence.

1. Mr. Spackman was called and examined by the defendant. On his cross-examination by the plaintiff, he stated that during the period in which he was selling certain bills drawn by Thompson, he heard that he was buying cotton in New York at higher prices than some others: but he never heard any suspicions or doubts of the goodness of his bills, before the news from Liverpool. His brother-in-law, Mr. Wilson, did not state any doubt on his mind about the goodness of the bills. The plaintiff in reply called Joseph R. Evans, and offered to prove by him a conversation which had occurred between him and Mr. Spackman, in which Spackman, before the news from Liverpool, had heard doubt and suspicion of the goodness of Thompson's bills. The defendant objected. The plaintiff, referring to the above evidence, urged that the evidence was offered to contradict that part of Mr. Spackman's testimony. The Court admitted the evidence, and the defendant excepted.

The rule now relied on by the defendant is that which was estab-

(Sharp *v.* Emmet.)

lished in the *Queen's Case*, that before giving such evidence to contradict a witness, he must be first asked particularly as to the conversation concerning which he is to be contradicted. That seems to have been considered in the *Queen's Case*, as a rule of practice previously established in England. Here, it is believed, it has not been : and though there are many cases in which it would be fair and proper, that a witness should have an opportunity of refreshing his memory, by being directed particularly to the subject, before he is contradicted, yet there are other cases in which it would be inconvenient to lay it down as an uniform rule of practice. The witness may have gone away, out of the jurisdiction of the Court: and in the case of a deposition, the course would be impracticable. In Massachusetts, the question was very carefully considered in their Supreme Court, and in a learned and able opinion, they dissented from the rule *in toto*. We are disposed to leave it in Pennsylvania, as a matter for the discretion of the Courts on the trial, as we believe it has, generally speaking, hitherto been.

As to the second exception, we think the transactions of the defendant with Halliday, Jones & Brooks were not evidence in this cause, being *res inter alios acta.*

Judgment reversed, and *venire facias de novo* awarded.