NAGI *v.* DETROIT UNITED RAILWAY.

1. STREET RAILWAYS — NEGLIGENCE — CONTRIBUTORY NEGLIGENCE — QUESTIONS FOR JURY.

In an action against a street car company for personal injuries caused to plaintiff by a collision between his automobile and defendant's interurban car, whether plaintiff was guilty of contributory negligence in not abandoning his car when he found he could not turn out of the roadbed and whether there was any negligence in the operation of defendant's car, *held*, under the evidence, questions for the jury.[1]

2. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—SUDDEN PERIL.

One put suddenly in peril is not required imperatively to do that which, after the peril is ended, it is seen he might have done and escaped, but the law makes allowance for the fright and lack of coolness of judgment incident to such peril.[2]

3. STREET RAILWAYS—WEIGHT OF EVIDENCE.

Verdict for plaintiff *held*, not against the great weight of the evidence.[3]

4. WITNESSES — IMPEACHING TESTIMONY — WITNESS TO BE IMPEACHED SHOULD BE EXAMINED.

The rule for the admission of impeaching testimony requires that the witness whose testimony is sought to be impeached should first be given opportunity through proper examination either to admit or explain or deny the claimed impeaching testimony.[4]

5. NEW TRIAL—PROPERLY DENIED WHERE PROFFERED IMPEACHING TESTIMONY INADMISSIBLE.

The trial court properly denied a motion for a new trial based on testimony impeaching the testimony of a witness since deceased; it being impossible to lay the proper foundation therefor by examination of said witness, and

---

[1]Street Railroads, 36 Cyc. pp. 1616, 1623; [2]Negligence, 29 Cyc. pp. 521, 522; [3]Street Railroads, 36 Cyc. p. 1596; [4]Witnesses, 40 Cyc. pp. 2719, 2728.

therefore the proffered impeaching testimony would be inadmissible in the event a new trial were granted.[5]

6. DAMAGES—PROSPECTIVE DAMAGES SHOULD BE REDUCED TO PRESENT WORTH.

The trial court was in error in instructing the jury to give at present prospective damages, not reduced by computation of present worth.[6]

7. APPEAL AND ERROR—ERROR IN FAILING TO REDUCE PROSPECTIVE DAMAGES TO PRESENT WORTH MAY BE CURED BY REDUCING VERDICT.

Error in failing to instruct the jury to compute the present worth of prospective damages goes only to the amount of the verdict, and a reduction protecting defendant fully may be ordered, on review, as a condition of affirmance.[7]

8. SAME — VERDICT FOR $30,000 REDUCED TO $21,000 RENDERING ERROR WITHOUT PREJUDICE.

Where the verdict for plaintiff for $30,000 must be reduced because of the trial judge's failure to instruct the jury to reduce the prospective damages to present worth, a reduction to $21,000 will render the error without prejudice to defendant, and said amount is not excessive, under the circumstances; plaintiff being seriously injured, his actual monetary losses being $6,460.[8]

Error to Wayne; Murphy (Alfred J.), J.   Submitted April 23, 1925.   (Docket No. 69.)   Decided June 18, 1925.

Case by John Nagi against the Detroit United Railway for personal injuries.   Judgment for plaintiff.   Defendant brings error.   Affirmed, conditionally.

*William G. Fitzpatrick* (*W. E. Tarsney*, of counsel), for appellant.

*Henry H. Roberts*, for appellee.

CLARK, J.   Plaintiff had verdict and judgment for

[5]New Trial, 29 Cyc. pp. 898, 918; Witnesses, 40 Cyc. p. 2725; [6]Damages, 17 C. J. § 383 (Anno); [7]Appeal and Error, 4 C. J. § 3150; [8]Appeal and Error, 4 C. J. § 3152.

$30,000. Defendant brings error. Two questions were disposed of correctly by the trial judge in deciding a reserved motion to direct a verdict for defendant:

"The meritorious question presented under this motion is, whether plaintiff upon his own showing is precluded from recovery by carelessness on his part which either occasioned or contributed towards his injury; and secondly, whether there is any testimony tending to show negligent operation of the defendant's interurban street car.

"The plaintiff's testimony, giving to it that favorable construction which is requisite under a motion of this character, showed that he was driving the Ford automobile, accompanied by a male adult and the latter's young son, at about 7:30 p. m. on February 16, 1921. He was driving north on West Jefferson avenue, toward the city of Detroit. The pavement was wet and slippery upon the paved portion of the roadway. That portion of the highway between the street car tracks was unpaved, was affected by the moisture, and its road bed was, at a somewhat uneven grade, a little lower than the top of the street car rail. The plaintiff claims that, in order to avoid another automobile standing in the highway, he was obliged to turn to the left, and, in doing so, drove in and upon the street car track. The precise position of this stationary automobile, whether at the curb or standing out in the traveled portion of the highway, was not disclosed. The lights upon the plaintiff's automobile were lit. Having gone upon the street car tracks, the plaintiff testified that he endeavored immediately thereafter to return to the paved portion of the street. While engaged in this endeavor, he saw at a distance of from two and one-half to three blocks, the defendant's oncoming interurban street car, proceeding in a southerly direction, away from the city of Detroit and toward the plaintiff's automobile. The slippery condition of the street railway roadbed and the elevation of the street car tracks above that roadbed prevented the plaintiff, according to his claim, from regaining the paved portion of the highway with his automobile.

"He says the effort to leave the street railway tracks

and to return to the paved portion of the highway was continued.

"Passengers in the oncoming street car testified that plaintiff's automobile was visible to them from their position in front of the street car, for a distance of from two and a half to three blocks. These passengers further said that the motorman of the street car at no time slackened its speed, after the automobile was within their view, that the motorman did not apply the brakes until at or subsequent to the time when it collided with plaintiff's automobile, and that, during at least a portion of the time while the street car was approaching the plaintiff's automobile, the motorman was stooped over, apparently observing something within the vestibule of the street car.

"The collision seriously and permanently injured the plaintiff.

"One of the claims urged by the defendant in support of the contention of contributory negligence on the plaintiff's part is that it was incumbent upon him to have left his automobile and to reach the pavement, thus gaining a place of safety. This is predicated upon his statement that his automobile was proceeding within the tracks at a rate of about four miles an hour.

"This resumé of the plaintiff's case, viewed in its most favorable light, clearly creates, in my judgment, an issue for the decision of the jury. The plaintiff had the right to go upon the street car tracks. Not only had he this right, but it is a reasonable inference from the testimony to hold that entrance upon the tracks, if not physically necessary, was a prudent course of action in passing the stationary automobile.

"Having succeeded in passing this automobile, the plaintiff then undertook to return to the paved portion of the street. He could not accomplish it.

"Can it be said that, with the duty resting upon him, to propel his automobile with reasonable regard to the protection of his two passengers, there was a legal duty for him to abandon his automobile as the street car approached and the peril of collision impended.

"To answer this question correctly, one must consider all the attending circumstances. Neither the physical situation nor the time in which to act ac-

corded much opportunity for deliberation. It may well be said that the plaintiff momentarily hoped to reach a place of safety with his automobile. He had the safety of his two fellow passengers to consider. Whether it was reasonable to remain in the automobile or to abandon it, seems to me very clearly to present a question of fact and not one of law. This must also be said with reference to the plaintiff's operation of his automobile. The facts which he claims impelled him to drive upon the street car track, the difficulties which he maintained prevented him from immediately regaining a position of safety in the highway, the speed at which he was propelling his automobile,— these, and the other circumstances confronting him, came within the scope of the duty of the jury, and not of the court.

"So, too, it may be said that the claims urged by the plaintiff as showing negligent operation of the street car, make that question one for the jury. When it is remembered that the plaintiff's theory shows that the motorman could or should have seen the approaching automobile on the street car tracks a distance of from two and one-half to three blocks, that the automobile continued its progress within these tracks throughout that distance, that there was neither a lessening of speed nor an application of the brakes, nor any effort to bring the street car under such control as would avoid a collision, I think it clear that the issue thus raised comes within the provinces of the jury, and not of the court.

"Accordingly, the attitude taken at the close of the plaintiff's case is now reaffirmed, and the motion for a directed verdict in behalf of the defendant, notwithstanding the verdict which the jury rendered, is herewith denied."

Viewed retrospectively, it will appear, probably, to plaintiff and to others that it would have been better had he attempted to save himself by quitting the automobile before the collision. But that does not determine the question. Plaintiff viewed the situation prospectively, in a sudden emergency, in peril. He, his passengers, his car, the interurban and those it carried, were in danger. To get his car from the

track was desirable.    That he continued too long, perhaps, in his effort to leave the track, will not now be held to be contributory negligence as a matter of law.

*Krouse* v. *Railway Co.*, 215 Mich. 139, is not decisive of the question.    The case falls within the rule of *Fehnrich* v. *Railroad Co.*, 87 Mich. 612:

"One put suddenly in peril is not required imperatively to do that which, after the peril is ended, it is seen he might have done and escaped.    The law makes allowance for the fright and lack of coolness of judgment incident to such peril."

See, also, *Schnurr* v. *Railway*, 222 Mich. 591; *Gibbard* v. *Cursan*, 225 Mich. 311; *Weitzel* v. *Railway*, 186 Mich. 7; *Leary* v. *Becker*, 190 Mich. 697.

It is urged that the verdict is against the great weight of the evidence.    The case is close but after due consideration we are constrained to agree with Judge Murphy, who said in disposing of the question:

"The verdict of a jury is not to be lightly set aside. That the court, were he a juror, would have reached a different conclusion upon the controverted facts, does not afford reason for vacating the verdict.    This may only be done when it is clearly established that the jury's decision does not find reasonable support in the evidence, but is more likely to be attributed to causes outside the record such as passion, prejudice, sympathy, or some extraneous influence.

"The defendant presented witnesses, some apparently disinterested, whose version of the facts attending the collision was wholly at variance with plaintiff's claim and irreconcilable with it.    Thus the jury was confronted with two sets of witnesses, four of them maintaining consistently the plaintiff's theory, opposed by the group summoned in behalf of the defendant. There was no appeal to the jury by plaintiff's counsel which tended to arouse their antipathies or to play upon their sympathies, and the court expressly instructed the jury to discard sympathy as a factor in reaching their verdict, whatever it might be.

"To hold in favor of the defendant's position would be tantamount to saying that the jury were in duty bound to discard the testimony of the plaintiff's witnesses as carrying a lesser probative force than that of the defendant's witnesses. Such a holding, in my view, would invade the province of the jury. It was their function, and theirs alone, to ascribe the true relative weight to be accorded these opposing and irreconcilable groups of witnesses. I am unable to say that, in accepting the plaintiff's group as furnishing the evidence, upon which to base a verdict, the jury must be said to have disregarded the greater weight of the evidence."

Ignatz Cetnar and John Weslowicz, plaintiff's witnesses, testified that they were passengers on the interurban and saw the accident. Their testimony is strongly corroborative of that of plaintiff.

After motion for new trial had been denied, defendant filed motion for leave to file a motion for a new trial. We quote the decision of the trial judge:

"This is a motion for leave to file a motion for a new trial herein. A motion for a new trial has heretofore been denied. This application is made chiefly in reliance upon a letter said to have been written, sent by one of the plaintiff's witnesses, Ignatz Cetnar, subsequent to the giving of his testimony. The trial herein was had in the month of January, 1924. The witness Cetnar committed suicide in the month of June, 1924. The letter referred to was written by him during the interval between the trial and his death. It is written in his native tongue—Polish— and was mailed to the claims department of the defendant company. Upon the trial Cetnar testified that he was an eyewitness of the accident involved. In his letter this testimony is stated to be false, and to have been induced by the promise of the payment of $500 by the plaintiff to Cetnar.

"A further proffer of impeaching testimony is made by the defendant. It is offered to show that subsequent to the trial Cetnar admitted orally to two men that he was not a spectator of the collision in question.

"Properly to consider the admissibility of the fore-

going documentary testimony and the testimony of the living witnesses, this test should be applied: Would this proffered testimony be received in the event that a new trial were granted? The familiar rule for the admission of impeaching testimony requires that the witness whose testimony is sought to be impeached should first be given opportunity through proper examination either to admit or explain or deny the claimed impeaching testimony. The death of Cetnar of course makes the application of this doctrine impossible. Is this rule to be relaxed because of his death?

"A similar situation, although involving the decision of the question in the trial of a capital offense in the Federal jurisdiction, was presented to the Supreme Court of the United States in the case of *Mattox* v. *United States,* 156 U. S. 244 (15 Sup. Ct. 337). While it is at once obvious that there was necessarily involved in the decision in that case the constitutional provision that an accused shall be confronted by the witnesses against him, wherein there is a vital distinction between that case and the case at bar, nevertheless the reason of the rule and an analysis of the adjudication of the rule are therein given, in the majority opinion of the court, written by the late Mr. Justice Brown. There was a dissenting opinion in which the considerations which argue for a relaxation of the rule on the ground of an overruling necessity, was also filed.

"The question seems to be one of first impression within this jurisdiction. I am of the view that the reasons elaborated by Mr. Justice Brown and the authorities cited by him in support of that reason, enunciate the safer and the wiser doctrine. Accordingly, were a new trial granted and such testimony proffered, including the oral as well as the documentary offer, I would exclude it.

"The motion for leave to file a motion for a new trial is therefore denied."

This decision squares with the weight of authority. It is said in 40 Cyc. p. 2723:

"Absent witness—The rule that a witness cannot be impeached by proof of inconsistent statements unless a foundation is first laid by interrogating him in re-

spect thereto is not rendered inoperative by the fact that the witness whom it is desired to impeach is not physically present in court, and such foundation therefore cannot be laid, and hence where testimony taken by interrogatories or deposition, or testimony given on a former occasion by an absent or deceased witness is introduced in evidence, contradictory statements of such witness cannot be shown unless a proper foundation was laid. at the time when such testimony was given."

And in 5 Jones Commentaries on Evidence, § 846:

"The general rule of exclusion applies where the witness whose testimony is attacked is deceased or absent.    Thus where the testimony given on a former trial by a witness, since deceased, is read to the jury, it is incompetent to show that such witness had stated, since the trial, that such testimony was untrue."

And in *Runyan* v. *Price*, 15 Ohio St. 14:

"If we look at the principal question decided in this case simply as one of judicial policy, without reference to the authority of adjudged cases, it seems to me that a reason in addition to any that I have yet heard stated, may be found in favor of our conclusion in the following considerations:

" 'Dead men tell no tales'; and if the rule be once established that the testimony of a deceased witness may be impeached by giving in evidence declarations alleged to have been made by him out of court differing from those contained in his testimony, and when he has had no opportunity for explanation—when all opportunity for explanation by him has passed away —when few will have the motive, and none the power to vindicate his integrity and truthfulness such as he would have if living, it seems to me that temptations to perjury and subornation would be not a little increased by the comparative impunity with which those crimes might be committed.    Such declarations, at best, are the lowest kind of evidence; and the administration of justice will suffer little in any case by their exclusion; while, if admitted, and they are falsely alleged against a dead witness, it would be hardly possible ever to disprove them."

See, also, *Stacy* v. *Graham*, 14 N. Y. 504; *Craft* v. *Commonwealth*, 81 Ky. 250 (50 Am. Rep. 160); *Eppert* v. *Hall*, 133 Ind. 418 (31 N. E. 74, 32 N. E. 713); *State* v. *Johnson*, 35 La. Ann. 871; *Ayers* v. *Watson*, 132 U. S. 394 (10 Sup. Ct. 116).

Although the judge at the conclusion of proof invited requests to charge and again in closing his charge asked counsel if anything was to be suggested, no request or suggestion was preferred on the subject of damages.    The instruction on the subject, otherwise correct, did not direct the jury that, if allowance were made for future earnings, they should compute the present value on the basis of plaintiff's age and expectancy of life.    Instead he said:

"If there is any permanent injury of any kind, it would be your duty, in awarding him a verdict, to give him at present what he would sustain during the remainder of his life, because permanent injury must be compensated for."

If it were now urged that the instruction was merely insufficient or incomplete, it could be passed because of the silence of counsel and their failure to request a charge on the subject.    *Hartwig* v. *Kell*, 199 Mich. 603.    But to instruct the jury to give at present prospective damages, not reduced by computation of present worth, is error.    But it goes only to the amount of the verdict, and a reduction protecting defendant fully may be ordered here as a condition of affirmance.    *Gallagher* v. *Monroe*, 222 Mich. 202; *Sweeney* v. *Moreland Bros. Co.*, 227 Mich. 203; *Gwitt* v. *Foss*, 230 Mich. 8.

Of plaintiff's injuries we quote again from an opinion of Judge Murphy:

"The plaintiff is 33 years of age; his expectancy of life, according to the mortality tables, is 33.21 years. Prior to this accident he had never been ill.    He had worked steadily.    His earnings over a very con-

siderable period of time, at the Detroit City Gas Company, were six dollars a day for an eight-hour day. In addition to this regular wage, he received a bonus of ten dollars a month, if he worked 30 days every month.    He had been in receipt of this bonus throughout his employment with the company.    Thereby he earned $190 a month.

"The physical injuries he sustained were most serious in their nature and nearly resulted in his death.    He was unconscious from two to three weeks following the collision.    He was confined in a hospital from the date of the collision, February 16, 1921, to June 22, 1921.    His hands were injured, and both of his arms were broken.    His left leg was crushed, and there has resulted a permanent stiffening of the left knee due to ankelosis.    He was crushed between the eyes, and there has resulted a permanent deformity due to a loss of the upper part of his nose. The upper jaw bone was broken, and though the fracture healed, there was left an impairment of his power of mastication, because of protruding lower teeth.    There are scars on his face and a bump upon his head, which are permanent.    For from ten to twelve days following the injury his case, in the language of a medical witness, was a 'borderline case' for the eventuality of life or death was uncertain. He also lost some of his teeth.

"When he regained the power of locomotion, he was obliged to go upon crutches for 16 months.    After the crutches were discarded, he was obliged to use a cane for a period of six months.    It was not until June, 1923, that he was able to attempt work."

Plaintiff's actual monetary losses from the time of the accident to the time of the trial were $6,460.    The remainder of the verdict must cover damages for impaired earning capacity, pain and suffering, for deformities, and for impairment in ability to masticate. The amount allowed as prospective damages we have no means of knowing.    A reduction of verdict to $21,000 will render the error without prejudice to the defendant, and that amount is not excessive.    *Fish-*

*leigh* v. *Railway*, 205 Mich. 145; *Clumfoot* v. *St. Clair Tunnel Co.*, 221 Mich. 113.

We have considered all questions raised.    If within 30 days plaintiff will remit the judgment down to $21,000, it will stand affirmed in that amount, but without costs for the reason stated.    If plaintiff does not remit, the judgment will be reversed and a new trial granted, costs to abide the result.

MCDONALD, C. J., and BIRD, SHARPE, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.