## Curtis' Estate

*J. Maurice Gray*, for exceptant.
*Sadie T. M. Alexander*, contra.

KLEIN, J., July 3, 1936.—This is the second appeal from probate in this case.

The decedent died on August 17, 1933. A will dated March 30, 1930, was admitted to probate. A legatee under a will dated August 8, 1933, appealed from this probate. The appeal was sustained after a hearing before Stearne, J., of this court and the second will probated. The present appeal is from the probate of this will.

The petition upon which this appeal is based prays for the award of an issue to the court of common pleas to try by jury the following questions of fact:

1. Whether or not the said writing was executed by the decedent;

2. Whether or not the said writing was procured by undue influence, duress and constraint practiced upon the decedent by Anna B. Howard and others;

3. Whether or not the said writing is the will of the said decedent.

After taking extensive testimony, Judge Marx, the hearing judge, declined the third request, but awarded an issue as to the first two questions. To this ruling the proponent of the second will filed exceptions which are now before us for consideration.

The will in question is an inartistic document consisting of about forty words written disjointedly in longhand on a single sheet of lined writing paper. At the end of the document, directly below the word "signed", the signatures of Bessie Gaskins and Flossie Griffin appear, apparently as witnesses. Directly below these signatures is a scrawl which proponents claim is the signature of Alice Curtis, the decedent. On the same line and to the right, in a more legible hand, the signature "Alice Curtis" again appears. Below these signatures is the signature of Lillian N. Ingraham, a notary public, under the legend "Sworn before me this 12th day of August 1933", together with the date of expiration of her commission and an imprint of her notarial seal.

At the hearing before Judge Stearne, Flossie Griffin and the notary public appeared. They were both examined and cross-examined. Their testimony, summarized in brief, was to the effect that they witnessed the signature of the testatrix on the will here in question and that at the time of the execution of the will she was of sound mind.

Flossie Griffin and the notary public also appeared before the register of wills when this will was probated.

At the hearing before Judge Marx, on the present appeal, the notary public was again called. Her testimony on this occasion was at variance with her testimony at the hearing before Judge Stearne.

Bessie Gaskins likewise testified at the hearing before Judge Marx. She is apparently an illiterate woman, and her testimony is confused and uncertain. She stated that she did not see the testatrix sign and did not hear her declare the writing to be a will. The witness testified that on the contrary she believed that she was signing a receipt for $36.

Proponent called as a witness Joseph J. Breithaupt, assistant accountant of The Philadelphia Saving Fund Society, in which institution decedent carried a savings account. This witness was qualified as a handwriting expert. After comparing the signatures on the will with the signature card of the bank, he testified that in his opinion the signatures were not written by the same person.

Flossie Griffin did not appear at the hearing before Judge Marx. Both counsel for the proponent and counsel for appellant stated that they were unable to locate her. Therefore counsel for the proponent offered in evidence, without objection, a transcript of her testimony before Judge Stearne.

Mrs. Alexander, counsel for appellant, then took the witness stand, and, subject to objection, testified that subsequent to the date of the hearing before Judge Stearne, Flossie Griffin called at her office, and, in the presence of Bessie Gaskins, Lucy Adger and the appellant, stated, in

general, that she signed the paper but knew nothing about a will, that she had not seen the testatrix at all and had not seen her sign. Lucy Adger then testified, also under objection, corroborating Mrs. Alexander's statements.

Exceptions were taken to the admission of this testimony.

After a careful study of the subject, we are of opinion that there was no error in admitting this testimony. However, Harden v. Hays, 9 Pa. 151 (1848), and Neely v. Neely, 17 Pa. 227 (1851), relied upon by the learned hearing judge as authority, are not, in our opinion, conclusive on this point.

In Harden v. Hays a will was established by proof of the signature of a deceased subscribing witness. The declarations of the deceased witness that the testator was incompetent at the time of signing the will were held admissible in evidence because the proof of the signature of a subscribing witness is prima facie evidence of the competency of the testator to make a will. But that case differs from the case before us because there the witness did not appear in person before any tribunal, and it would be manifestly unfair to permit proof of his signature without also admitting his declaration concerning testator's mental condition.

In Neely v. Neely the signature of an attesting witness was proved by evidence of handwriting in order to render admissible a promissory note. The Supreme Court, expressly relying on the authority of Harden v. Hays, permitted in evidence the statements of the witness, who had become insane, made during a lucid interval, that she had not signed her name to the note. In this case, as in Harden v. Hays, the witness never appeared in person before any tribunal for examination.

For the reasons stated we think that Harden v. Hays and Neely v. Neely are distinguishable from the instant case.

The question before us is whether the testimony of an absent witness, given under oath at a former hearing

when the witness was subject to cross-examination, may be impeached, when offered in evidence at a later trial, by statements of the witness made out of court and not under oath, subsequent to the first hearing.

The authorities in this country are not in accord on the manner in which a witness may be discredited by proof of contradictory statements, and three different rules have been evolved.

The general rule in this country, which was adopted by the Supreme Court of the United States in the leading case of Mattox v. United States, 156 U. S. 237 (1895), was to the effect that before a witness may be impeached by proof that he has made statements contradictory or different from the testimony given by him upon the stand, a foundation must be laid by interrogating the witness himself as to whether he has ever made such statements. Under that decision, the rule is strictly applied in all cases and is not relaxed even in the event of the death or insanity of the witness. This view is followed by the great majority of courts in this country. See, for example, Stacy et al. v. Graham, 14 N. Y. 492 (1856); Runyan v. Price et al., 15 Ohio St. 1 (1846); Nagi v. Detroit United Rwy., 231 Mich. 452 (1925).

In a few States, the courts have followed the rule laid down in Tucker v. Welsh, 17 Mass. 160 (1821), which permits contradictory testimony to be introduced in all cases without first requiring the witness to be afforded an opportunity to explain.

The early Pennsylvania cases followed the general rule, but the injustice frequently resulting from its strict application caused our courts to take still a third view. This view leaves the question entirely to the discretion of the trial judge. We believe the Pennsylvania rule to be the most sound and equitable.

The Pennsylvania view was firmly established in Rothrock, Exec., v. Gallaher, 91 Pa. 108 (1879), in which Mr. Justice Mercur, who delivered the opinion of the court, said at page 113:

"The decisions applicable to the eighth and tenth assignments are not in harmony with each other. In 2 Greenl. Ev., sects. 462, 467; McAteer v. McMullen, 2 Barr 32; Wright v. Crumpsty, *supra*, it is said that a witness cannot be discredited by proof of contradictory statements, unless he be first examined as to such statements, so as to give an opportunity for explanation. On the contrary it is held in Sharp v. Emmett, 5 Whart. 288; Kay v. Fredrigal, 3 Barr 221; Walden v. Finch, 20 P. F. Smith 460, whether his attention must first be called to the matter, rests in the sound discretion of the judge, and unless that discretion be abused, its exercise is not ground for reversal. We think it best to adhere to the rule laid down in the last case. So holding we see no such abuse of a sound discretion in this case as to give cause for reversal."

This was followed by Baldi v. Metropolitan Ins. Co., 18 Pa. Superior Ct. 599 (1902), in which the affidavit of an absent witness was read in evidence by the defendant. The plaintiff was permitted, in the rebuttal, to prove contradictory statements made by the witness. The admission of this testimony was made the subject of an assignment of error on appeal. It was urged that the evidence was incompetent even though the witness was not present in court, because his attention had not been first called to the alleged contradictory statements and an opportunity had not been afforded him to explain them.

President Judge Rice, speaking for the court, said at page 609:

"The rule relied upon by the defendants' counsel is not an inflexible one, and it is now settled by the later cases that the question is one of sound discretion in the judge trying the case upon the circumstances before him: Cronkrite v. Trexler, 187 Pa. 100, citing Walden v. Finch, 70 Pa. 460, and Rothrock v. Gallaher, 91 Pa. 108. In Walden v. Finch, Mr. Justice Agnew said: 'Where the witnesses are all present, and the contradiction tends seriously to impair the credibility of the witness, or to reflect upon his character, a court would feel bound to give him

an opportunity of explanation or denial, before suffering his testimony to be impeached by counterstatements. Under different circumstances a court would feel it proper to relax the rule.' In this case the rule, which is based largely on a regard for the witness himself, could not have been enforced without sacrificing the interests of the party. The court was clearly right in refusing to enforce it at such a sacrifice."

We are therefore of the opinion that the admission of the testimony of Mrs. Alexander and Lucy Adger was a matter for the discretion of the hearing judge, and that under all the circumstances of this case the acceptance of this testimony was fully warranted.

The facts in this case which in our opinion justified the hearing judge in awarding an issue as to whether this will was executed by the decedent, briefly outlined, are as follows: (1) The peculiar form of the will itself; (2) the unusual fact that the signatures of the witnesses appear above that of the decedent; (3) the illegible scrawl claimed to be the first signature; (4) the unusual fact that the will was purportedly signed a second time; (5) the contradictions in the testimony of the notary public; (6) the negative testimony of Bessie Gaskins; (7) the impeachment of Flossie Griffin's former testimony; (8) the significant fact that the handwriting expert called by the proponent was of opinion that the signatures on the will were not in the handwriting of the decedent.

However, we fail to find any testimony in the record to justify awarding an issue on the second question upon which the appeal is based, that is, whether or not the said writing was procured by undue influence, duress and constraint practiced upon the decedent by Anna B. Howard and others.

There is testimony to the effect that the aged testatrix was seriously ill, but the record is bare of any evidence which would warrant a finding that the will was procured by undue influence. On the contrary, one of contestant's witnesses testified that the decedent was not on friendly

terms with Anna B. Howard, by whom the undue influence is alleged to have been asserted, and that the decedent disliked her and avoided her company.

It is well established that old age, sickness, distress or debility of body do not prove, or raise a presumption of, incapacity: Brennan's Estate, 312 Pa. 335 (1933). Undue influence, like testamentary incapacity, must be established by the weight of the evidence. The court will not grant an issue devisavit vel non unless it is satisfied that it would, on due consideration of the evidence as a whole, resolving all doubts in favor of validity, reach the conclusion that the will did not express the testatrix's real wishes because it was procured through influence so exerted as to destroy free agency at the time the will was made: Lawrence's Estate, 286 Pa. 58 (1926). A careful reading of the whole record fails to reveal such testimony as would warrant a verdict against the will on the ground of undue influence.

Therefore exceptions 7 and 9 are sustained. The other exceptions are dismissed in accordance with this opinion. An issue will be awarded to determine whether the probated writing of August 8, 1933, was signed, sealed, published and declared as and for her last will and testament, by the decedent, Alice Curtis.