BURNETT v MACKWORTH G REES, INC

Docket No. 46351. Submitted May 7, 1981, at Detroit.—Decided September 21, 1981. Leave to appeal applied for.

Mary E. Burnett, while working as a press operator in Arkansas, lost four fingers when the press malfunctioned, crushing her hand. At the time of the accident, she was 19 years old. The press was manufactured by Verson Allsteel Press Company and was equipped with dual palm buttons furnished by Cutler-Hammer, Inc., and manufactured by Mackworth G. Rees, Inc. Cutler-Hammer designed the circuitry for the palm buttons which was incorporated in the presses manufactured by Verson Allsteel. The palm buttons were considered a safety feature, since both buttons had to be depressed in order to operate the machine. Burnett brought an action against Mackworth G. Rees, Inc., Rees, Inc., Cutler-Hammer and Verson Allsteel in the Oakland Circuit Court. The court, Frederick C. Ziem, J., granted judgment for plaintiff on the jury verdict of 1.5 million dollars and a finding that Cutler-Hammer was 95% negligent and Verson Allsteel was 5% negligent. The verdict was twice the amount prayed for by plaintiff. The jury found no cause of action as to Mackworth G. Rees, Inc., and Rees, Inc. Cutler-Hammer appealed after the court denied its motions for judgment notwithstanding the verdict, a new trial and remittitur. *Held:*

1. A jury verdict in a personal injury case should not be set aside as long as the amount awarded is within the range of the evidence and within the limits of what reasonable minds might deem just compensation for such imponderable items as personal injuries and pain and suffering. A plaintiff may recover a judgment in the amount of provable damages irrespective of the *ad damnum* clause. The award does not shock the conscience of the court and was consistent with the evidence.

2. A claim that a verdict is against the great weight of the

References for Points in Headnotes

[1, 2, 6] 22 Am Jur 2d, Damages § 366.
[3] 22 Am Jur 2d, Damages §§ 274, 276.
[4] 5 Am Jur 2d, Appeal and Error §§ 555, 640, 641.
[5] 61A Am Jur 2d, Pleading §§ 12, 13.

evidence must be raised in a motion for a new trial to be preserved for appellate review.

3. The statute requiring a party seeking the application of foreign law in a lawsuit to plead the issue requires only minimal notice to the other parties. The application of Arkansas law was proper.

Affirmed.

J. L. BANKS, J., dissented. He would hold that a jury verdict of more than twice the amount prayed for is excessive and requires remittitur. He would reverse and order remittitur or a new trial.

OPINION OF THE COURT

1. JUDGMENTS — REMITTITUR — PERSONAL INJURY CASE.

Remittitur can be ordered only if the jury verdict is so excessive as to shock the judicial conscience, and courts are particularly reluctant to disturb jury verdicts in personal injury cases because there is no absolute standard by which damages in personal injury cases can be measured.

2. JUDGMENTS — JURY VERDICT — PERSONAL INJURY CASE.

A jury verdict in a personal injury case should not be set aside as long as the amount awarded is within the range of the evidence and within the limits of what reasonable minds might deem just compensation for such imponderable items as personal injuries and pain and suffering.

3. JUDGMENTS — AD DAMNUM CLAUSES — DAMAGES — COURT RULES.

A trial court has the authority to award a greater amount of actual damages than a plaintiff had requested in her *ad damnum* clause, even though there was no motion to amend this clause; a plaintiff may recover a judgment in the amount of provable damages irrespective of the *ad damnum* clause (GCR 1963, 518.3).

4. NEW TRIAL — WEIGHT OF EVIDENCE — PRESERVING QUESTION.

A claim that a verdict is against the great weight of the evidence must be raised in a motion for a new trial to be preserved for appellate review.

5. CONFLICT OF LAWS — PLEADING — STATUTES.

The statute requiring a party seeking the application of foreign law in a lawsuit to plead the issue requires only minimal notice to the other parties (MCL 600.2114a; MSA 27A.2114[1]).

DISSENT BY J. L. BANKS, J.

6. JURY — EXCESSIVE VERDICTS — REMITTITUR.

> *A jury verdict of more than twice the amount prayed for is excessive and requires remittitur.*

*Goodman, Eden, Millender & Bedrosian* (by *Paul A. Rosen* and *Robert A. Koory*), for plaintiff.

*Vandeveer, Garzia, Tonkin, Kerr & Heaphy, P.C.* (by *Ivin E. Kerr* and *Mark D. Willmarth*), for defendants Mackworth G. Rees, Inc., and Rees, Inc.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen* (by *John P. Jacobs* and *Christine D. Oldani*), for defendant Cutler-Hammer, Inc.

Before: BASHARA, P.J., and N. J. KAUFMAN and J. L. BANKS,* JJ.

N. J. KAUFMAN, J. Defendant Cutler-Hammer appeals from the Oakland County Circuit Court's denial on July 6, 1979, of its motions for judgment notwithstanding the verdict, new trial and remittitur. The motions were brought after a jury trial at which the jury returned a verdict of 1.5 million dollars in favor of plaintiff and against defendants Cutler-Hammer and Verson Allsteel, apportioned 95% and 5% respectively. The verdict as to defendants Mackworth G. Rees, Inc., and Rees, Inc., was no cause of action. Defendant Cutler-Hammer brings this appeal as of right, pursuant to GCR 1963, 806.1.

On May 16, 1974, while working as a press operator at Flanders Industries in Fort Smith, Arkansas, plaintiff lost four fingers on her left hand when a press malfunctioned, crushing her

---

* Circuit judge, sitting on the Court of Appeals by assignment.

hand. At the time of the accident, plaintiff was 19 years old and had a life expectancy of 51 years.

There was considerable testimony as to the effect of the injury on plaintiff's lifestyle. In addition to the severe limitations on plaintiff's simple manual activities, this testimony revealed that since the accident, plaintiff has progressively withdrawn from public life.

Plaintiff has been disqualified from enlistment in the U.S. Navy because of her handicap. She applied for a position at General Electric for which she was more than qualified. However, at her interview, the company told her "they didn't want to talk to [her] anymore".

Plaintiff is presently studying to be an electronics technician. However, a rehabilitation specialist who gave plaintiff a finger/hand dexterity test concluded that plaintiff has a severely diminished capacity to perform the work of her chosen field. This specialist further testified that it was his opinion that plaintiff will have substantial difficulty in obtaining a job as an electronics technician or in retaining such a job.

Verson Allsteel manufactured the press involved in the instant case. Various portions of the press were furnished by Cutler-Hammer. The palm buttons were furnished to Verson by Cutler-Hammer but were manufactured by Mackworth G. Rees, Inc.

The press was equipped with dual palm buttons. The press would not operate unless both buttons were depressed. The dual palm system was considered to be a safety feature because a worker's hand could not be in the area being pressed, since both hands had to be on the palm buttons.

Cutler-Hammer had ordered the palm buttons from a Rees catalogue and Cutler-Hammer deter-

mined their use. Cutler-Hammer designed the circuitry to be used in the palm button which would be incorporated in the press to be manufactured by Verson Allsteel. Verson Allsteel had no significant electrical design staff.

Plaintiff had been taught to operate the machine by picking up a piece of metal with her right hand, placing it in the die area, pressing the palm buttons with both hands, waiting until the die had come down and gone up, then reaching in with her left hand to retrieve the piece. When the accident occurred, plaintiff was reaching with her right hand to get another piece when the right hand palm button fell off. The slide then came down on her left hand and crushed it. After plaintiff jerked her hand out, the press continued cycling up and down.

An officer of Mackworth Rees testified as to the construction and normal operation of the press. He testified that the mushroom portion of the palm button sits on a shaft. A cotter pin is on the shaft to keep the contact discs on the shaft. When this cotter pin is removed, the machine is subject to stress and may fracture. Removal of the cotter pin takes place when the palm button contacts are cleaned by the press owner. If the cotter pin has been removed or bent, the fatigue potential of the metal increases. If the cotter pin fails, it is possible that the circuits could run and be energized, causing the press to trip. The officer of Mackworth Rees testified that an isolated contact would be safer to use than the two contact discs because in the event of a failure, the contacts would still be separate.

A Verson Allsteel employee testified that, at the time the press involved in the instant case was manufactured and sold, Verson bought the con-

trols from Cutler-Hammer and relied entirely on Cutler-Hammer's expertise.

A retired Cutler-Hammer employee testified that good engineering practice did not dictate examining component parts which were standardized and purchased from other manufacturers.

Professor John Carey, Professor Emeritus of Electrical Engineering at the University of Michigan, testified on behalf of plaintiff. He testified that an electrical design engineer should have been aware of the need for isolated contacts. In his opinion, the malfunction of the press was a foreseeable situation for a design engineer to apprehend and guard against. Professor Carey testified that a failure mode analysis should have been made on the circuit before it was supplied to any users.

On appeal, defendant Cutler-Hammer raises three issues, only one of which merits extended discussion. Defendant argues that the trial court abused its discretion in denying defendant's motion for a new trial or remittitur on the grounds of an excessive verdict of 1.5 million dollars for an injury involving the loss of four fingers.

In reviewing the decision of a trial judge to either grant or deny a remittitur or a new trial, this Court must determine whether or not there has been an abuse of discretion. *Pippen v Denison Division of Abex Corp,* 66 Mich App 664; 239 NW2d 704 (1976), *lv den* 399 Mich 823 (1977). Where there are no other errors in the trial, remittitur can be ordered only if the verdict is so excessive as to "shock the judicial conscience". *Id.,* 674.

A perusal of the cases discussing excessive verdicts discloses no mandatory approach for determining what amount in the context of a particular

set of facts will "shock the judicial conscience". In *Pippen,* the plaintiff lost an arm in an accident very similar to that involved in the instant case. The jury returned a verdict of $1,250,000 for the plaintiff. This Court held that this amount was not excessive.

While the plaintiff in *Pippen* lost his entire arm, Mr. Pippen at the time of his injury was 67 years old, while the plaintiff in the instant case was only 19 when she lost her fingers. Mr. Pippen's life expectancy was 14 years; plaintiff Burnett's was 51 years.

In *Tomei v Bloom Associates, Inc,* 75 Mich App 661; 255 NW2d 727 (1977), the jury awarded $250,-000 to the plaintiff who, as a result of dental malpractice, was injured to the extent that an area of her lower lip, about the size of a quarter, was permanently numb. This Court, in ordering remittitur, emphasized the relative lack of seriousness of the injury. The Court noted that there was neither disfigurement nor loss of a part of the body. The only actual effect on plaintiff's life as a result of the injury was a feeling of self-consciousness when eating and testimony that she felt differently about kissing her husband.

Defendant argues that a significant similarity between *Tomei* and the instant case is that the jury award greatly exceeded the *ad damnum* clauses in both cases. Defendant emphasizes the amount requested in plaintiff Burnett's *ad damnum* clause, $750,000, and deemphasizes the seriousness of her injury in order to bring the facts of the instant case within the parameters of *Tomei* rather than *Pippen.*

In the absence of any definitive test for determining excessiveness of a verdict, the question apparently turns on the facts of each case and the

feeling of the appellate court viewing those facts. This subjective test, often phrased as that which "shocks the judicial conscience", is often tempered by an appellate court's reluctance to interfere with a jury's disposition of a case. Were the facts of the instant case closer to those of *Tomei* than to *Pippen,* however, we do not believe we would be hesitant to order remittitur.

But, believing as we do that the case at bar much more closely approaches the situation in *Pippen,* and finding that an award of 1.5 million dollars for the loss of four fingers to a 19-year-old girl does not "shock our judicial conscience", we will not disturb the award of the jury.

Additionally, we note that Cutler-Hammer's arguments that the verdict should not stand because it was in excess of the *ad damnum* clause is not the rule in Michigan. GCR 1963, 518.3 makes it quite clear that this discrepancy is not fatal to a jury award. The rule states in pertinent part that "every final judgment shall grant relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings". See also *Piatkowski v Mok,* 29 Mich App 426, 428; 185 NW2d 413 (1971), *Gibeault v City of Highland Park,* 49 Mich App 736, 738; 212 NW2d 818 (1973), *aff'd* 391 Mich 814 (1974), and see also *Ravenis v Detroit General Hospital,* 63 Mich App 79, 86; 234 NW2d 411 (1975), *lv den* 395 Mich 824 (1976), where the Court allowed an award in excess of the *ad damnum* clause, where no amendment to the clause had been made.

Concededly, the majority in *Tomei, supra,* stated that awards in excess of the *ad damnum* clause are not allowed unless there is proper amendment, which may be made after the verdict in the trial

court's discretion. *Tomei* indicated that liberal amendment should be the rule unless a jury award is not supported by the evidence. *Id.,* 672; see also *Precopio v Detroit,* 94 Mich App 506, 510-511; 289 NW2d 34 (1979).

"We realize that failure to amend the pleadings to conform to the award is usually a technical error. However, consideration of such an amendment does require the court and the parties to consider the matter fully. We feel the trial court when granting a motion to amend the *ad damnum* clause must consider the reason for the amendment and can only grant the motion when the award is supported by the evidence." *Tomei, supra,* 672-673.

In the present case, although the *ad damnum* clause was apparently never amended, the purposes of such an amendment were met. The trial court considered and denied motions for judgment notwithstanding the verdict and for new trial or remittitur. Thus, the trial court fully explored the question of whether the award was supported by the evidence. To now reduce the award for plaintiff's failure to request post-trial amendment of the *ad damnum* clause would be an exaltation of form over substance. It is noteworthy that, as the court rules are now amended, a pleading need not demand a particular monetary award unless the opposing party requests specificity. GCR 1963, 111.1(3), 309. We believe that the award made was supported by the evidence.

In the instant case, at the time of trial, plaintiff was unemployed. She had been rejected by the U.S. Navy and by the General Electric Company. Although she was going to school, the jury was entitled to consider whether or not plaintiff would

ever get a job in her field or, indeed, whether she would be able to sustain another job at all.

The vocational rehabilitation consultant, Robert Ansell, had testified that, if plaintiff could secure employment in her chosen field, her earnings would be $20,000 per year. Although counsel for plaintiff believed that plaintiff would get a job, we cannot say, nor did he say, that the jury was bound by his view of plaintiff Burnett's future. If the jury determined, as it was free to do, that plaintiff would never be gainfully employed, her damages for lost earnings would, indeed, have totalled over one million dollars. Mr. Ansell's testimony was that despite plaintiff's superior intellectual ability, her physical dexterity was in the lowest one or two percentile of the population. In view of these limitations, coupled with evidence of plaintiff's deteriorating emotional state and social adjustment, the jury may have felt that plaintiff would never be gainfully employed. If this were the case, her lost earnings plus any award for pain and suffering, disfigurement, embarrassment and humiliation, could easily have equalled 1.5 million dollars.

As the Court stated in *Pippen:*

" 'As long as the amount awarded is within the range of the evidence, and within the limits of what reasonable minds might deem just compensation for such imponderable items as personal injuries sustained and pain and suffering, the verdict rendered should not be set aside.' " *Pippen, supra,* 675, citing *Stevens v Edward C Levy Co,* 376 Mich 1, 5; 135 NW2d 414 (1965).

The *Pippen* majority further stated:

"We must assume that the jury represented a cross-section of the community, with diverse experiences in

life. It reached its unanimous decision after considerable deliberation. The jury had the benefit not only of listening to the testimony, but also close and extended observation of the plaintiffs and their relative vitality, energy, and seriousness of injuries." *Id.,* 676.

Similarly, in the instant case, the jury verdict came after long deliberations and was unanimous. Defendant has not claimed any error during the trial of this case. Thus, under the majority opinion in *Pippen,* the award is affirmed.

Furthermore, Judge GILLIS, in dissent in *Pippen,* would have upheld the trial court's grant of remittitur for the reasons that *"[t]he trial judge not only has the opportunity to observe the evidence in the case but is also singularly able to observe the jurors in considering whether or not they were motivated by passion or prejudice in their verdict". Id.,* 680, quoting *Wry v Dial,* 18 Ariz App 503, 515; 503 P2d 979 (1972). (Emphasis in *Pippen.)* Taking the language from the minority as well as the majority opinion in *Pippen,* Cutler-Hammer has not suggested one incident which would have created prejudice or passion in the jurors. The trial court, after hearing the motion for new trial, including the claim of excessiveness and the request for remittitur, held that the evidence supported the verdict and his conscience was not shocked. Clearly, the trial judge was best able to observe the jury and he, with them, was best able to measure plaintiff's actual damages and the amount that would reasonably compensate her.

We believe that the award was consistent with the evidence and was in no way limited by plaintiff's counsel's closing argument. We therefore uphold the award of the lower court.

Defendant's second issue is framed as one of inconsistent verdicts. In reality, however, Cutler-

Hammer is arguing that the verdict in favor of Rees and against Cutler-Hammer was against the great weight of the evidence. Cutler-Hammer's motion for a new trial did not assert this issue and therefore Cutler-Hammer has not properly preserved this issue for review. *Froling v Bischoff,* 73 Mich App 496, 504; 252 NW2d 832 (1977).

Even assuming this issue had been properly preserved for review by this Court, the record provides ample evidence upon which the verdict could have been based. The palm button was sold by Rees from a catalogue. It was a shelf stock item which had a multitude of purposes. The use to which it was put was entirely up to the purchaser. The decision to use this type of palm button in conjunction with Cutler-Hammer's circuitry was made by Cutler-Hammer. The jury could certainly choose to believe Professor Carey's testimony that the circuitry designer, Cutler-Hammer, could have and should have foreseen the danger of using the Rees button with a dual control circuit.

The jury verdict in favor of Rees and against Cutler-Hammer was not against the great weight of the evidence and did not involve inconsistent verdicts.

Defendant's final contention on appeal is that the trial court erred in ruling that the controversy as to cross-claim liability was governed by Arkansas law.

At trial, defendant objected to the application of Arkansas law to the cross-claim between Cutler-Hammer and Verson Allsteel. Cutler-Hammer alleged that Arkansas law had not been properly pleaded pursuant to MCL 600.2114a; MSA 27A.2114(1). The trial judge ruled that Arkansas law would be applied. We believe that this decision was correct.

Only minimal notice is required to fulfill the dictates of the statute. See *Turner v Ford Motor Co,* 81 Mich App 521, 527; 265 NW2d 400 (1978). In the instant case, Verson Allsteel asserted the application of Arkansas law in its first responsive pleading to plaintiff's complaint.

Cutler-Hammer's argument on appeal is that the application of Arkansas law to the issue of apportionment of damages is against the public policy of this state. These grounds were never asserted at trial and, thus, Cutler-Hammer has not properly preserved this issue for review.

In its motion for a new trial, Cutler-Hammer made vague reference to the public policy argument. However, even if this Court were to fully address Cutler-Hammer's allegation, we would not find it persuasive. Since the time of trial in the instant case, the Michigan Supreme Court in *Placek v City of Sterling Heights,* 405 Mich 638; 275 NW2d 511 (1979), has adopted the rule of comparative negligence. This fact belies Cutler-Hammer's assertion that Arkansas law, which in certain instances allows for the apportionment of damages, is against the public policy of Michigan. Although *Placek* was decided after the time of trial in the instant case, the subsequent adoption of comparative negligence in Michigan indicates that there was, at the time of trial, nothing inherently incorrect or violative of Michigan's public policy in employing Arkansas law when that law was otherwise applicable to the instant case.

Affirmed. Costs to plaintiff.

BASHARA, P.J., concurred.

J. L. BANKS, J. *(dissenting).* I must respectfully dissent. A jury verdict of more than twice what the plaintiff asked is excessive; in addition, the

proofs offered at trial appear to provide no basis upon which this jury verdict can be sustained. Moreover, as the trial judge did not reduce the jury verdict to its present value, as he is required to do even absent a request, the case must be remanded for that purpose. *Freeman v Lanning Corp,* 61 Mich App 527, 531; 233 NW2d 68 (1975), *Currie v Fiting,* 375 Mich 440, 454; 134 NW2d 611 (1965), *Nagi v Detroit United Railway,* 231 Mich 452, 461; 204 NW 126 (1925).

I find, as does the majority, that an attractive, bright, articulate young woman was terribly injured in an industrial accident. I have no doubt that the physical and emotional scars that she sustained will follow her for the remainder of her life and that she has suffered a serious loss to both her capacity to earn and to her self-esteem. However, the jury's verdict must have some reasonable basis in the facts.

Plaintiff argued past and future pain and suffering, lost earning capacity, lost earnings sustained while she was hospitalized and while she was recovering from her injury, as well as medical expenses.

As to pain and suffering, counsel suggested that a fair award might be $2 per day for the 51 years life expectancy of the plaintiff after age 19. (365 × 51 = 18,615 days × $2 = $37,230)[1] Even if the amount might properly be $10 per day, the total for pain, suffering and mental anguish would only come to $186,150.

The proofs show that plaintiff suffered a loss in future earning capacity approximating $10,000 per year. The jury was entirely free to find that loss, and if it did so, to award damages to age 65

---

[1] Plaintiff's counsel incorrectly totaled this amount as $153,000 while outlining his damages to the jury during closing argument.

($410,000) or age 70 ($460,000). I disagree with the assumption made by the majority that this jury could have determined "that plaintiff would never be gainfully employed". There is no testimony that would support this inference. In fact, this is precisely the opposite of the plaintiff's theory at trial. The proofs showed a courageous, plucky, self-confident young woman, determined to make the very best of her serious handicap, resolute in her determination to succeed.

I agree that the trial proofs showed lost earnings during plaintiff's hospitalization and recovery from her injuries of at least $3,100. Moreover, the parties stipulated to medical expenses of $1,807.70.

It appears, then, that plaintiff's future losses to pain and suffering and her lost ability to earn comprise 99% of the damage award. If the proved future earning loss is a maximum of $460,000, then plaintiff receives an award for pain and suffering of $975,000 from these defendants.[2] This amounts to $52.11 per day for pain and suffering over the plaintiff's 51-year life expectancy from the time of this accident; 26 times what plaintiff's attorney asked the jury to award!

The economics of large jury awards aside, and remembering that this able and courageous plaintiff was very seriously injured, I conclude that bias and passion must have influenced this jury. I also conclude that the able trial judge abused his discretion in refusing defendants' motion for remittitur or a new trial.

I concur with the dissenters in *Precopio v Detroit,* 94 Mich App 506, 511-515; 289 NW2d 34 (1979), *lv gtd* 409 Mich 898 (1980), and *Pippen v*

---

[2] Defendant Mackworth G. Rees, Inc., settled with plaintiff at trial for $65,000. That amount was deducted from plaintiff's 1.5 million dollar jury award before judgment was entered against the remaining defendants.

*Denison Division of Abex Corp,* 66 Mich App 664, 678-684; 239 NW2d 704 (1976), that the amount of this award outstrips the evidence before the jury and shocks the judicial conscience.

I would reverse for an order for remittitur to $750,000, the amount of plaintiff's *ad damnum* clause, or for a new trial.